Environmental Protection Agency. And could you tell us what you've arranged on time? I couldn't hear. Thank you. Did the clerk get that? Which is going first? Okay. Yes, good morning, Your Honors. This case arises out of an environmental assessment and construction of a wastewater treatment facility for the city of Missoula. The plaintiffs are a coalition composed of residents of the Rattlesnake neighborhood of the city of Missoula, which is one of the neighborhoods in which the city proposes to construct its headwater sewer system. Am I correct in understanding this is not a wilderness case? This is a neighborhood. They probably have septic tanks or outhouses. Yes. And they're objecting city sewer coming in? Because of the impacts on them. Special assessments, you mean? If this sewer system is constructed in Missoula. Hold on. Listen to my question. If I understand the case correctly, and I want you to educate me if I don't, it's not a wilderness case. It's a neighborhood. They probably have septic tanks and outhouses, and they probably object to the extension of the city sewer system because it would mean assessments and upsetting whatever system they currently have in their homes. It's more than that. It's also a wilderness case to the extent that they believe that there should have been an environmental impact statement that discusses, among other things, the impact of the construction of this system in the city of Missoula, not just in the Rattlesnake neighborhood, but in the city of Missoula on wildlife. Hold on. I'm not asking right yet about the legal theories. I just want to know, this Rattlesnake neighborhood, is it some kind of park or wilderness, or is it a residential neighborhood? It's an old neighborhood of Missoula. It's constructed along the Rattlesnake Creek. Several of the residents have lived in the houses in which they grew up. It's a wooded area built along this rather nice creek. It's not a constructed park as such. It's an original wooded area in the city of Missoula. It's within the city limits, but several of these residents have fairly large areas around the house, some of them between five and ten acres. Some people have horses. The amenities include this wooded area, which people use for recreation, to walk. It's an upscale neighborhood because of that. Is it their concern that there will be added people moving into the area? That's one of the concerns, is the impact on their neighborhood. The assessments will be, we've been told, between $20,000 and $80,000 for some of these homeowners. And for someone who is living in the house that he or she grew up in and who has lived a simple life and is retired, that's going to be a significant impact. It will probably result in the forced sale of several of these properties. Is that the kind of concern that one addresses under NEPA? What we address under NEPA is the impact on the human environment, and that's what's addressed under NEPA. And we suggest that the district court was wrong when they bifurcated the whole case and treated the impact on the city of Missoula's wastewater treatment facility generally as one problem, and the impact on the Rattlesnake neighborhood as another. You don't get to the NEPA issue unless it's a major federal action. That's correct. You might want to address what is your theory that was presented to the district court as to why it's a major federal action. This is a major federal action, first of all, because it meets the definitions of the regulations, 40 CFR 1508. When you say this, what do you mean? This entire project. Wait. The project is by the city of Missoula. Yes. That's not the federal government. It's municipality. When you say this, I need to know this federal thing. That was ambiguous. The project started out as an EPA project. There was a wastewater treatment facility plan in 1984 and then a plan update in 1999. Now, these are Missoula's. Well, no, they're EPA's. EPA wrote the 50-year plan? Yes. The EPA approved this plan. Wait. Wrote and approved are two different things. If the city wrote the plan and EPA approved it or if EPA wrote the plan or if EPA told the city you're putting too much sewage in the creek, you've got to figure out some plan so that we'll let you continue your discharges, those are different things, and it would be helpful if we knew what it was. Well, the EPA didn't write the plan, but they approved it under the regulations, which permits them to, in effect, delegate the writing of the plan to a state agency, and those regulations set out the requirements for state agency control. As a practical matter, what happened was that the state and the city wrote the plan with some input from the EPA to comply with the statute, and then in June of the year 2000, the EPA approved the issue to order approving the plan, announced a public comment period, which was published in a classified ad in the Missoula newspaper, and then adopted the plan formally on July 31st of 2000. Now, who initiated this plan to do something? Wasn't it the city of Missoula that decided that they needed to upgrade their sewer system? The sewer system is approved by the EPA. I know, but let's get back to whose plan this is. If they're going to have a plan, EPA has a right to approve it, but didn't Missoula start the whole thing? I suppose they did to enable them to comply, among other things, with the Clean Water Act. They're discharging treated wastewater into the Clark Fork River, Clark Fork and the Columbia River, and I think that's the EPA nexus, the federal nexus. The EPA continues to permit this wastewater treatment facility into which all of these sewer systems are draining. Well, let's, I guess, move on to whether we've got two separate things going on. As I understand it, the plant is built complete? The plant itself is complete. Some of the neighborhood feeders into the plant have been completed. Some have not. There was an initial grant of $5 million to the city toward the construction of the plant itself, and it's our understanding that that's been paid. There were, when the EPA's approval of the plan was announced, the approval itself said that there would be additional federal funding besides the funds that had already been approved. And as we showed the district judge, the Congress had appropriated at the point that they made the appropriation of $400,000 to the specifically earmarked for the rattlesnake program. There have been other federal payments of federal funds through the EPA for additional branches of this entire project. It's our submission that the project itself, because Missoula is a city of 100,000 people and it's contained in an airshed area that is unique, because Missoula is surrounded by, in effect, by mountains, that that makes any impact of traffic or of city services or of public amenities or the other factors affecting the human environment is going to be for the entire area, not just for this single rattlesnake neighborhood. I don't quite get why. It seems to me that if it's a big project that's going to take 50 years and it's by the city and the city is going to pay for it and perform it, then there's no EPA challenge because the city isn't the federal government. If the idea is that the money is going to come from the feds and there's going to be a stream of it over 50 years as needed by the city of Missoula, then my thought is, well, good luck. We can't get a bridge to the airport and catch a can. Okay. Considering the national hockery, an earmark every year for 50 years, good luck. The NEPA does not, and I think this is another mistake that the EPA in their argument has made and that was adopted by the district judge, is that it's not the appropriation of money that's important, it's whether there's a proposal that constitutes a major federal action affecting the human environment. And that is not determined just by money. We're not talking about money. We're talking about all of the other factors that are set out in the regulations. Okay. So it's not the money. It's not just the money. Major federal action is what? Major federal action is an action like this that's been evaluated and approved by the EPA. Please say it again without saying the word this because I keep thinking what the antecedent of this is. I agree. That's ambiguous. This wastewater treatment project for the city of Missoula is a federal project because it is a major project that affects the human environment in the city of Missoula. Well, we would agree with that completely if the feds were building it. The feds are funding it and they're approving it. What percentage of the funding is coming from the federal government and what percentage is from the Missoula? I think it's roughly 10% up to this point. I haven't calculated exactly. That makes it a major federal project? Yes, because the EPA is not only just supervising the payment of the money. They're continually reviewing the permit for the wastewater treatment facility and they are continually reviewing these environmental assessments and FONSIs. The FONSI, in this case, was issued by the EPA. The feds are giving you 10 cents on the dollar right now? I think so, yes. If you get a couple junior senators and junior congressmen, then it may be a different story. It might be. But I don't think money is the sole issue in this case, and that is not what determines whether it's a federal project or not. If we were to decide that these are separate projects, then the fact that Congress has appropriated the money is not the final agency action. You would agree with that? The final agency action occurred when they approved the FONSI. But that's assuming that this is one whole project. I was promising that if we were to decide that it's two projects. If you were to decide that it was two projects, I think you still have to look at the context in which it arose, and that's the large project that was initiated in 1984. But we don't know that EPA is going to approve this next segment, because you haven't even asked for the money yet, I think. I don't think there's been a request. If that's the bar to judicial review of EPA's actions or failure to file an environmental impact statement, then we would never get to the point where judicial review, I think, and I suggest should occur first, because the environmental work is supposed to inform people about what decisions they should make, and that would include members of the public, city councils, also governmental agencies. Well, we have a lot of cases which come to us on the complaint that the agency has granted the go-ahead and taken final action. Then we get into the act and say whether the EA or the EIS was adequate, and we grant injunctions. But potentially here, EPA may decide not to make a grant at all. Well, I suggest that they've committed themselves when it got as far as the congressional appropriation and when they've continually supervised the entire project. And I think the EPA regards it as an EPA project. There's the e-mail that was in the record before the trial court that the EPA office in Denver, which supervises the Montana EPA, suggested that, I think the language was, ain't NEPA fun, they're looking for a lawsuit over this whole issue. I think in that e-mail itself is a recognition that it's an EPA project, not a city of Missoula project. So your challenge really isn't that the EPA finding of no significant impact in its environmental assessment is the wrong to be challenged. Your theory of the case is that the project itself has been made a federal project by the federal funding and oversight, and the project itself requires an environmental impact statement. It's our contention that the project itself was a federal project ab initio. It's unlike the Karst case, which has been supplied to you by my opposing counsel. Let's say that we're skeptical to the point where we can't take it as a certainty that all the money is just going to keep flowing out of the federal tap. So we look at it, first the $5 million to upgrade the central plant, all done and spent, and then I think it was $500,000 for an extension of the sewer pipe. The EPA hasn't decided to grant it yet, so you can't very well challenge the EPA for having granted it in violation of law. We're not complaining about the money. We're complaining about the failure to do an environmental impact statement and suggesting that the environmental assessment that was done was inadequate. And what exactly would it speak to? I mean, it can't speak to the city's own city sewer project within city limits because that's not a federal action. So it has to speak to something that the federal government has done. The federal government has supervised, among other things, the disbursement or not disbursement of funds, and that in itself is, I suggest, a major federal action or is part of the major federal action. So non-disbursement is. All right. In other words, not just the disbursement, but making the decision to disburse. So we should get an EPA statement before Alaska can be turned down on the bridge to nowhere. Well, that's. The bridge to the airport. That would be true if that were the only thing that the EPA were being asked to do. But in this case, they're asked to review the environmental work that's done and to participate in it and to make the determinations, and they have made determinations that there should be a finding of no significant impact. And that's what we're complaining about. We're not complaining about the money. We're complaining about the finding of no significant impact and the inadequacy of the environmental assessment that was done. I think that's what it comes down to. Counsel, you might want to save a couple minutes for a rebuttal argument. I shall. Thank you. Thank you, counsel. I think this was a 15-minute argument. Good morning. May it please the Court, Jennifer Scheller representing EPA. The district court was correct that Rattlesnake Coalition needs to challenge a final agency action, that it lacks standing to challenge the one final agency action that EPA has taken to date, and as this Court has suggested, that there has been no final agency action on the 2004 appropriation. Could you speak to the notion that the agency action is approval of the city's sewage disposal 50-year plan? EPA has not approved the city's 50-year plan in any meaningful sense for purposes of triggering NEPA analysis. What Mr. Murdoch was suggesting was that the original plan was somehow tied to EPA, the 20-year plan that was done in the early 80s. Under the Clean Water Act at that time, there's some discussion of this in the excerpts, although it was not in our briefs, but at that time EPA was giving out money pursuant to the Clean Water Act to encourage municipalities to develop long-range plans for their wastewater treatment. That money is no longer available. EPA doesn't do that anymore, and the city's 50-year plan that we're talking about now has not been funded in any part by EPA, nor did EPA participate in the sort of all of the discussions leading up to the plan, et cetera. EPA's only role here is to approve or disapprove grant applications as they come in from the city of Missoula, and that's just not enough to federalize the entire 50-year plan such that NEPA is required on the entire document. Now, when EPA had the authority, let's say that the, just hypothetically, that this expansion of the plant was completely environmentally bad. They were just pouring raw sewage out into the rattlesnake. Could you have come in with a suit to halt that? If they were just dumping the sewage into the receiving water body, assuming that that was violating some, for instance, national pollutant elimination discharge system requirement, they could come in and bring an enforcement suit under the Clean Water Act, if that were the case. That's the purpose. Well, if they were just using outhouses to let the sewage flow into the creek, had it been navigable waters of the United States, discharge of pollutant from a point source without a permit, wouldn't it? Right, exactly. So I imagine you could have cork in it. So there would be some enforcement authority there. Right. But that's not what's going on here. EPA, the city is taking the responsible course in trying to figure out what's going to be needed over the next 50 years for wastewater treatment. They decided to apply for a grant for upgrading their central treatment facility. EPA approved that grant. The project has been constructed. And EPA, there would be no purpose in ordering additional NEPA review. There could not be a redress of whatever injuries that the Rattlesnake Coalition has suffered from EPA's approval of that $5 million grant for the central. Hey, hypothetically, this is purely hypothetical, I don't think the record supports this, that the city had a plan which was going to ruin the prettiest ranch in the Rattlesnake Valley or area and just turn the plant into a sewage lagoon or the prettiest part of the ranch into a sewage lagoon. And the city had made a request to EPA to fund the whole thing. EPA decided to go ahead and grant the request and fund the sewage lagoon that was going to ruin the prettiest ranch in the valley. Could a challenge be made at that time? Yes, absolutely. And if we bring it back a little closer to what's going on in this case, if EPA decides to approve the grant application for the Rattlesnake neighborhood, at that time, these plaintiffs, if they still think that the NEPA analysis is inadequate, can come into court and get review of EPA's decision to do that. Of course, assuming they don't wait too long. If they wait 10 years after the project's already been built, then that might be a little too late. But, you know, as long as they're timely in their suit, they can get review of EPA's decision, whatever it ultimately is on the grant application. So, you know, really what's going on here is because of the completion of the wastewater treatment plant upgrades, the Rattlesnake Coalition just doesn't have standing to challenge EPA's final agency action, approving the grant money for that project. But even if we assume that it does, as we explain in our brief, they have not shown that EPA's involvement in the city's 50-year planning document as a whole has been sufficient to federalize it. Even if you look at the money that's been spent, it's too small of a sum compared to the overall cost of the project. And if you look at EPA's decision-making authority, which it has very little decision-making authority, just on the grants, that's just not enough under this court's precedent to federalize that entire 50-year planning document. Let's say that EPA does decide to approve a grant, $2 million, I'm just pulling a number out of the air, to pipe sewage from the Rattlesnake Valley to the central sewage plant. When and how would a challenge to EPA's decision be made? Once there is a final decision, EPA signs off on the approval of the grant. Any time from that point, certainly, probably until the project is completed, depending on the specific circumstances, but there would certainly be a time frame in which these plaintiffs could come in and challenge that decision. Now, if they came in and challenged it and were successful, that the grant was inappropriate, could the city not just go ahead and build it with their own money? That is true, but they wouldn't be able to use the Federal money until the agency had redone its NEPA analysis and presumably awarded it a second grant. So, yes, that's true, and which does make this case a lot different from instances where this Court is reviewing, for instance, timber sales or other actions where the Federal agency is the actor. And then my final point is just that with respect to the 2004 appropriation as I don't think Mr. Murdoch challenged, EPA still has not made a final decision on that grant application. Have they received a grant request? They have received a grant request. Earlier, the papers looked like they hadn't even gotten the grant request. My understanding is that they got a grant request back in 2003 or 2004, right about the time of the appropriation, and they decided that there would have to be additional NEPA analysis. And I'm not sure what's going on with that, but I do know that in May of this year, the EPA region notified the City of Missoula that if they still wanted that grant money for the Rattlesnake neighborhood, they would have to submit a new application because just so much time had elapsed. And so the city has not yet submitted that new application. So I guess in some sense there hasn't really been a valid grant application submitted in EPA's estimation. But in any event, if they do decide to grant it, then Rattlesnake Coalition could come in at that time and challenge that decision. Unless there are any further questions, I would just ask that this Court affirm. Thank you, Counsel. Thank you. Your Honors, I'm Jim Nugent, City Attorney for the City of Missoula, and with me today is Susan Firth, one of our Deputy Attorneys. We're here on behalf of the City of Missoula to request that you affirm the district court decision that was previously entered in this matter. To address some of the questions that have already been raised, the Rattlesnake Valley is a very populous valley. The Rattlesnake Creek is on the western edge of it. With respect to the size of the lots, the environmental assessment indicates that 46% of the properties are less than one-quarter acre in size. So these are not big spreads or anything like that. This area was an area that was developed several decades ago for the most part and the lower part, and then as you go higher, there's been a little growth over time. And they're all using septic tanks for outhouses? Septic tanks and cesspools are the primary means of treating the waste at this particular time. There was an instance, ironically, since this lawsuit started, where in Lincoln Woods someone had to put a port-a-potty in their driveway because they were having difficulty with their septic failure. It's been addressed by a subsequent court. It's a fancier outhouse than what we have in my town and the areas without municipal. Yes. But this is a very populous valley, and it's an area that wasn't in the city at the time it was primarily developed. So the county did not have septic, so what the city of Missoula is attempting to do under its voluntary nutrient reduction program associated with its discharge permit for its plant that's on the western edge of town is to sewer some of the areas that were already developed and have these septic systems and cesspools. And this area that's within the SID boundaries, there's 477 properties. 459 of them are already developed, so 96% of the area is already developed. And we're dealing with, within the boundaries of the Special Improvement District, an area that basically is built out except for a few vacant lots here and there. It's all within the city limits? It's now within the city limits. It has been annexed during the past decade and two decades in various segments it was annexed. But when a whole lot of this area was originally built, especially on the west side on the Greenville Drive side, it was not in the city limits. And the county doesn't have a municipal sewer plant operation. So part of the project is to try and extend sewer to these areas. Now, it's important to also recognize that what we're trying to do pursuant to this project is to eliminate some of the failing septic systems that are there in order to protect the groundwater in Rattlesnake, protect Rattlesnake Creek itself. Missoula is known as the hub of five valleys, and the main valley is the Missoula Valley, and the aquifer comes downhill. Rattlesnake is a higher elevation than the valley itself, and we're trying to protect the Missoula Valley aquifer, which is the sole source aquifer, as well as protect the Clark Fork River as it flows through in that northern part of town and goes past this Rattlesnake Valley. And some of the key factors that were involved was in making the decision to proceed with this project as part of the planning process for the community, and that's where the 50-year plan comes in. Can anything happen on this 50-year plan unless the feds fund it? Well, the 50-year plan would have happened. It was the city's plan. There weren't any federal monies for the plan itself. There were some monies for the upgrade of the existing plan, but the plan itself did not receive federal monies. But in the plan, it identifies when you identify funding sources, of course the people are going to be interested in how this is going to be paid for, and one of the funding sources identified is that there would be some applications submitted to seek federal funding. There would be applications to the state to seek the state revolving fund monies to get lower interest rates than what you might get. So this wasn't a deal where the feds say, you set up the plan, we'll pay for it? Oh, absolutely not. Wouldn't that be nice? It would be. And, in fact, we can't get a bridge either. We wanted to get a bridge out of lower Millard Creek across the Bitterroot River on the southwest corner, and we haven't got our bridge either. But in addition to the factors to eliminate the septic systems, we were trying to protect the valley aquifer, protect the quality of the water since it's a sole source aquifer, and then comply with this voluntary nutrient reduction program, which is part of our discharge permit with the state of Montana. Is the city putting any of its own money into this? Yes. There's lots of city money going in. Most is coming through the special improvement districts that are assessed against the property. But especially now, we've missed four construction seasons with the delays on this project, and the way the SID laws work is you have to identify a maximum assessment against the property owners. The dilemma we're facing now with rising construction costs is how much are those costs going to exceed what the estimated costs were at the time that the SID was created? I actually didn't mean just the city treasury from general revenues. I was including the assessments. Yeah. Because what the homeowners pay isn't federal either. Yeah. And the city, through its revenues from the sewage plant, will, with its periodic assessments, will have to set aside monies to help make up the difference if it continues with this SID if the costs are now in excess of what the SID maximums were identified as. So the pipe is going to be paid for ideally with special assessments, but as a practical matter partly from the general fund of the city? With the construction costs, that's a possibility for the sewer main. That now becomes more and more a possibility the longer the project is delayed. The federal money that's talked about with respect to the project under the environmental assessment is only identified as $382,305. Oh, excuse me, counsel. For no reason I can justify, I'm kind of interested in municipal sewers, so I didn't notice you were over time. Oh, I'm sorry. I request that you affirm the decision of the lower district court. Thank you. Thank you. I'll be brief. First of all, I don't think, and I've visited the Rattlesnake neighborhood several times in the course of this litigation. I'm not aware of any outhouses, traditional outhouses in that neighborhood. People do have septic systems. One of the allegations concerning the insufficiency of the environmental work that was done was the lack of any meaningful consideration of alternatives to the gravity-fed sewer. And the plaintiffs, if this had gone to trial, would suggest that there are several technological improvements that have occurred, actually, since the approval of the 1999 plan by the EPA, which would provide alternative means for disposing of sewage, and that these should be considered and have never been considered by anyone, including the EPA or the environmental assessment or the FONSI. As to the grants, the city, obviously, is going to get as much outside money as they can, or I presume that they would. But the way that this will probably work is that the city will build the facility and then apply for the grant, which will bring money in after the facility is completed or after the sewer lines are installed. And so contrary to what the government is suggesting, that at that point would be too late to have any meaningful remedy in terms of environmental review. It's not the grants that the Act addresses. It's proposals that the Act addresses. And the reason that the Act addresses proposals and the regulations under the Act address proposals is so that there can be help finished, so that there can be consideration of what has been found prior to making any final or meaningful decisions. Thank you. Thank you, Counsel. Rattlesnake Coalition versus EPA is submitted.
judges: Fletcher, Kleinfeld, Gould